# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**REVELATION ENERGY, LLC,**
**Employer Below, Petitioner**

**FILED**
**May 22, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 22-ICA-260**   (BOR Appeal No. 2058335)
(JCN: 2018014565)

**ANTHONY PREECE,**
**Claimant Below, Respondent**


## MEMORANDUM DECISION

Petitioner Revelation Energy, LLC appeals the October 21, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent Anthony Preece filed a timely response.[1] Petitioner filed a reply. The issue on appeal is whether the Board erred in affirming the Office of Judges' ("OOJ") order, which reversed the claim administrator's order granting Mr. Preece a 31% permanent partial disability ("PPD") award and instead granting him a 42% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's Order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The procedural history of this case is extremely convoluted. It is sufficient to say that Mr. Preece was employed as an equipment operator for the employer when, in December of 2017, he completed two WC-1 forms indicating that he sustained injuries from falls. The record is not clear as to whether the first report was a mistake or whether two falls did indeed occur, but the medical records all deal with the second reported fall, wherein Mr. Preece fell from a rock truck and landed on the bumper. By order dated December 29, 2017, the claim administrator held the claim compensable for closed fracture of the seventh cervical vertebra, closed fracture of the fourth thoracic vertebra, scalp laceration, closed fracture of the left rib, and traumatic tooth injury.

---

[1] Revelation Energy, LLC is represented by Jeffrey M. Carder, Esq. Mr. Preece is represented by Donald C. Wandling, Esq.

1

In January of 2018, Mr. Preece underwent an MRI of his cervical spine, which revealed multilevel discogenic changes associated with stenosis. Mr. Preece was examined by Stanley Tao, M.D., an orthopedist, in February of 2018. Mr. Preece reported loss of left shoulder range of motion due to pain, but the physical exam was unremarkable. Dr. Tao diagnosed biceps tendonitis of the left upper extremity and left upper extremity neuropathy. In April of 2018, Mr. Preece underwent a C6-C7 anterior cervical discectomy and fusion and was subsequently diagnosed with cervical disc disease with radiculopathy.

After treating with various physicians over the course of several months, Mr. Preece underwent an independent medical evaluation ("IME") performed by Syam Stoll, M.D., in October of 2018. Mr. Preece reported thoracic pain that increased when he sneezed, left arm atrophy, and left-handed weakness. Dr. Stoll noted that Mr. Preece's teeth had been evaluated for implants but that he was unable to undergo the procedure due to significant bone loss and, instead, had been prescribed a tooth partial. Dr. Stoll diagnosed a C7 fracture/status post anterior cervical discectomy and fusion, a T4 fracture, a facial laceration, and fracture of teeth 9 through 11. Dr. Stoll opined that Mr. Preece had reached maximum medical improvement ("MMI") and stated it was unlikely that he would be able to return to work due to extensive preexisting cervical spondylosis and C7 radiculopathy. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("the *Guides*"), Dr. Stoll placed Mr. Preece in Cervical Category I-B of Table 75 for the C7 cervical fracture, which was 4% whole person impairment ("WPI"). He also placed Mr. Preece in Cervical Category IV-D for a single level spine fusion with residual signs or symptoms, which was 10% WPI. Dr. Stoll combined these ratings for a total of 14% WPI pursuant to Table 75. For range of motion restrictions in the cervical spine, Dr. Stoll assigned 17% WPI. For sensory and motor deficits, he assigned 11% WPI. Dr. Stoll combined these ratings, along with the 14% WPI rating from Table 75, for a total of 37% WPI. Mr. Stoll then placed Mr. Preece in Cervical Category IV pursuant to West Virginia Code of State Rules § 85-20 Table E (2006) and adjusted his recommendation to 28% WPI. Finally, Dr. Stoll apportioned 10% WPI for extensive preexisting cervical spondylosis, which he opined clearly preexisted the injuries in the claim as shown by imaging studies.

Moving to the thoracic spine, Dr. Stoll assigned 4% WPI for the T4 compression fracture and 3% WPI for range of motion restrictions, which combined to a 7% WPI for the thoracic spine. This rating did not need to be adjusted pursuant to West Virginia Code of State Rules § 85-20 Table D because it fell within the impairment range provided and, as such, the final total recommendation for the thoracic spine was 7% WPI.

Regarding the teeth, Dr. Stoll assigned 10% WPI due to limitations in Mr. Preece's diet. Dr. Stoll then combined the 18% impairment rating for the cervical spine, the 7% impairment rating for the thoracic spine, and the 10% impairment for the teeth, which totaled 31% WPI. By order dated November 30, 2018, the claim administrator granted Mr. Preece a 31% PPD award based on Dr. Stoll's recommendation. Mr. Preece protested.

2

Mr. Preece underwent a second IME, which was performed by Bruce Guberman, M.D., in May of 2019. Dr. Guberman's physical examination revealed reduced ranges of motion in the cervical spine, the thoracic spine, and left shoulder. A sensory examination revealed decreased sensation at the left thumb, index, middle fingers, and the radial half of the left ring finger. Dr. Guberman diagnosed a fracture of the seventh cervical vertebra and disc herniation at C6-C7, status post anterior cervical discectomy and fusion at C6-C7; a compression fracture of the fourth thoracic vertebra; a chronic posttraumatic strain of the left shoulder; and a history of injury of the mouth which included removal of tooth 9 and sensitivity to the gums and teeth. Dr. Guberman placed Mr. Preece at MMI.

Using the *Guides*, Dr. Guberman placed Mr. Preece in Cervical Category IV-D of Table 75 for a single-level spinal fusion with residual signs or symptoms, which was 10% WPI. Dr. Guberman stated he did not need to place Mr. Preece in any other cervical category because the fusion was "the most significant impairment of the cervical spine." He also assigned 11% WPI for range of motion restrictions and 6% WPI for sensory and motor deficits. These impairment ratings were combined to total 25% WPI, which fit within the range provided by West Virginia Code of State Rules § 85-20 Table E. Therefore, Dr. Guberman's final rating for the cervical spine was 25% WPI.

Moving to the thoracic spine, Dr. Guberman assigned Mr. Preece 4% WPI for the T4 compression and 6% WPI for range of motion restrictions, for a total of 8% WPI. This rating did not need to be adjusted pursuant to West Virginia Code of State Rules § 85-20 Table D because it fell within the impairment range provided and, as such, the final total recommendation for the thoracic spine was 8% WPI. With respect to Mr. Preece's left shoulder, Dr. Guberman assigned 10% upper extremity impairment for range of motion restrictions, which converted to 6% WPI. Finally, Dr. Guberman assigned Mr. Preece 10% WPI for his teeth. Dr. Guberman combined the impairment ratings for the cervical spine, thoracic spine, left shoulder, and teeth, which totaled 42% WPI.

Dr. Guberman commented on Dr. Stoll's IME, criticizing his apportionment for preexisting cervical spondylosis. Dr. Guberman opined that apportionment was not necessary because the evidence did not indicate that Mr. Preece had any prior injury, symptoms, loss of motion, or interference with daily activities in regard to the cervical spine prior to the instant compensable injury. According to Dr. Guberman, "the presence of degenerative changes does not indicate the claimant necessarily had any symptoms or impairment in regard to his cervical spine before the current injury." As such, Dr. Guberman found no medical or logical reason to apportion any of the impairment rating for preexisting degenerative changes in the cervical spine, further noting that there would be no objective reason for apportioning 10% WPI as Dr. Stoll had. Lastly, Dr. Guberman pointed out that if Dr. Stoll believed that Mr. Preece belonged in Category IA for the thoracic spine, then Dr. Stoll had incorrectly assigned Mr. Preece 4% WPI for that impairment rating because that category allowed only 2% WPI.

On October 25, 2019, Dr. Stoll completed an addendum report, opining that Mr. Preece's left shoulder symptoms were unrelated to the compensable injury and should not have been included in the impairment rating as Dr. Guberman had done. Dr. Stoll also stated Dr. Guberman should have apportioned some impairment for Mr. Preece's cervical spine impairment, citing the *Guides*. Dr. Stoll opined that Dr. Guberman's assumption that Mr. Preece would not have had any impairment in the cervical spine range of motion prior to the work-related injury was simply that—an assumption not supported by objective medical documentation. In Dr. Stoll's opinion, the only time apportionment was not indicated was if the objective medical documentation, such as imaging studies, did not reveal chronic findings.

On February 14, 2020, the OOJ reversed the claim administrator's November 30, 2018, order that granted Mr. Preece a 31% PPD award in accordance with Dr. Stoll's recommendation and, instead, granted Mr. Preece a 42% PPD award in accordance with Dr. Guberman's report.

By order dated August 4, 2020, the Board vacated and remanded the February 14, 2020, OOJ order on the basis that Dr. Guberman had included an impairment rating for the left shoulder, which was not a compensable component of the claim. As such, the Board instructed the claim administrator to determine whether a left shoulder injury should be added to the claim. The Board further instructed that if the claim administrator determined that the left shoulder was not a compensable component, it was to reinstate the original 31% PPD award.

On August 12, 2020, the claim administrator denied Mr. Preece's request to add left shoulder sprain as an additional compensable condition in the claim and reinstated his 31% PPD award. Mr. Preece protested. By order dated February 8, 2021, the OOJ reversed the claim administrator's order and found that left shoulder strain should be added as a compensable component of the claim. The OOJ noted that Mr. Preece complained of left shoulder pain immediately after the injury, was treated by his treating physician for left shoulder symptoms, and that he underwent left shoulder injections after the compensable injury. Further, on both WC-1 forms, Mr. Preece wrote that he injured his left shoulder. The OOJ noted that no evidence of prior injury to or symptoms of the left shoulder had been submitted. Dr. Guberman also opined that Mr. Preece sustained a left shoulder strain as a result of the compensable injury. As such, the OOJ found that, given the mechanism of injury and Mr. Preece's medical records, it was more likely than not that he had injured his left shoulder in December of 2017.

On July 23, 2021, the Board affirmed the OOJ's order insofar as it added left shoulder strain as a compensable condition in the claim but remanded the matter for a determination of a PPD award because the OOJ had not included a ruling on that issue in its order.

4

On May 12, 2022, the OOJ reversed the claim administrator's August 12, 2020, order granting Mr. Preece a 31% PPD award and, instead, granted him a 42% PPD award in accordance with Dr. Guberman's recommendation. The OOJ found that Dr. Guberman's IME was the best indicator of Mr. Preece's WPI as he evaluated all of the compensable conditions (including Mr. Preece's left shoulder) and his impairment rating was reasonable in light of the severity of Mr. Preece's injury. The OOJ also pointed out that Dr. Guberman's range of motion impairment findings were either substantially similar to or below those found by Dr. Stoll. Further, Dr. Stoll did not evaluate Mr. Preece's left shoulder and did not include an impairment rating for that compensable injury. As such, the OOJ concluded that Dr. Guberman's assessment was more reliable.

By order dated October 21, 2022, the Board adopted the findings of fact and conclusions of law of the OOJ and affirmed its May 12, 2022, order. The employer now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, __, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, the employer argues that the Board was clearly wrong in affirming the OOJ's order reversing the claim administrator's order and granting a 42% PPD award in accordance with Dr. Guberman's recommendation. The employer argues that neither preexisting impairments nor any aggravation of those impairments are to be considered in determining a PPD award. According to the employer, the Supreme Court of Appeals of West Virginia ("SCAWV") has long held that an evaluating physician's report shall be disregarded as unreliable when the physician fails to apportion for preexisting conditions. The employer avers that Dr. Stoll properly attributed 10% WPI to Mr. Preece's preexisting

impairment, which was seen on imaging studies performed after the work-related incident. Dr. Stoll took into account the degenerative changes to the spine when calculating impairment, as required by law. In contrast, Dr. Guberman refused to apportion any of Mr. Preece's cervical spine impairment to his non-compensable, preexisting conditions. The employer argues that Dr. Guberman's insistence that Mr. Preece had no prior impairment is contrary to the evidence of record. The employer claims that the diagnostic studies demonstrate extensive preexisting cervical spondylosis which caused or contributed to Mr. Preece's present day impairment.

The employer further argues that Dr. Guberman's impairment rating for the left shoulder strain is erroneous. According to the employer, Dr. Guberman "double-dipped" by assigning impairment for symptomology in both the cervical spine and left shoulder. The employer contends that, as such, not only did Dr. Guberman fail to apportion for preexisting conditions, but he also failed to properly calculate impairment for the compensable left shoulder sprain/strain. As such, the employer contends that Dr. Guberman's report is unreliable and should be disregarded.

We disagree. While the employer cites to case law establishing that the SCAWV has reversed the Board when physicians have failed to apportion for preexisting conditions, those cases are distinguishable from the case at bar because those claimants were symptomatic prior to their injuries. Further, as this Court noted in *Duff*:

> The Supreme Court of Appeals of West Virginia has previously recognized that radiographic evidence of degenerative changes alone is not sufficient to allow apportionment for preexisting injury. There must be something more, some evidence of a detrimental effect on work or the activities of daily living. Where such evidence of impairment is lacking, the Court has found that apportionment was not appropriate. *See Galaxy Distributing of WV, Inc. v. Spangler*, No. 19-0803, 2020 WL 6559079 (W. Va. Nov. 6, 2020) (memorandum decision) (unanimous decision) (the Board did not err in finding that apportionment was arbitrary and speculative where preexisting changes to right shoulder did not appear to affect the claimant's work or daily activities); *Minor v. West Virginia Division of Motor Vehicles*, No. 17-0077, 2017 WL 6503113, at *2 (W. Va. Dec. 19, 2017) (memorandum decision) (3-2 decision reversing Board of Review decision apportioning for preexisting condition) ("While the 2004 x-ray may have shown degenerative changes [to the right knee], those changes did not appear to affect Mr. Minor's ability to work or his activities of daily living. Therefore, we agree with the Office of Judges' findings that . . . apportionment of the impairment rating due to the 2004 x-ray was improper. . . .").

247 W. Va. at __, 882 S.E.2d at 924.

Here, Dr. Stoll's decision to apportion impairment due to Mr. Preece's preexisting condition was based solely on imaging studies performed after the compensable injury. In his addendum report, Dr. Stoll relied only on imaging studies to support his conclusion that apportionment was necessary. However, as noted by Dr. Guberman and the OOJ, there was no evidence presented that Mr. Preece was symptomatic prior to the injury, that he sought treatment for his preexisting condition prior to the injury, or that his work or activities of daily life were affected by his preexisting condition. We also note that in addition to improperly apportioning for preexisting conditions on the sole basis of imaging studies, Dr. Stoll also failed to reevaluate Mr. Preece after his left shoulder injury was deemed compensable and his report lacks an impairment rating of that compensable component.

Lastly, to the extent the employer argues that Dr. Guberman "double-dipped" in assigning impairment in the cervical spine and the left shoulder, we find no error. The report is clear that Dr. Guberman assigned impairment ratings for range of motion and motor/sensory deficits in the cervical spine and then range of motion in the left shoulder, which are distinct components deserving of their own impairment ratings. Based on the foregoing, we find that the Board's decision does not violate any statutory provision, nor is it clearly wrong in light of the evidence, nor characterized by an abuse of discretion.

Accordingly, we affirm the Board's order affirming the OOJ's order, which reversed claim administrator's order granting Mr. Mullins a 31% PPD award and instead granted him a 42% PPD award in accordance with Dr. Guberman's recommendation.

Affirmed.

**ISSUED:** May 22, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

7